UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY RASMUSSEN,
et al.,

                Plaintiffs,                        Civil Action Nos.
                                                  06-CV-13883-DT
vs.                                         06-CV-13884-DT

FLEETWOOD ENTERPRISES, INC.,           HON. BERNARD A. FRIEDMAN
et al.,

                Defendants.
_____/

## OPINION AND ORDER
## IMPOSING SANCTIONS AGAINST COUNSEL FOR NON-PARTY MIKE RIEHL'S PURSUANT TO COURT'S INHERENT AUTHORITY
## and
## DENYING DEFENDANTS' MOTION FOR RULE 11 SANCTIONS (DKT. NO. 30)

**I.**      **INTRODUCTION**

This matter is presently before the Court on Defendants' Motion for Rule 11 Sanctions. On January 18, 2007, the Court issued an Opinion and Order denying the Motion to Remand filed by Non-Party Mike Riehl's, and imposing sanctions against Mike Riehl's. Mike Riehl's requested that the Court consider additional argument regarding the sanctions.

The Court has had the opportunity to review the parties' briefs and relevant documents in this matter. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court shall decide the motion without oral argument. The Court will deny the motion. However, the Court will impose sanctions against counsel for Mike Riehl's, pursuant to the Court's inherent authority.

**A.**      **RECAP OF FACTUAL BACKGROUND/PROCEDURAL HISTORY**

In May 2003, Tammy and Eric Rasmussen ("Plaintiffs Tammy and Eric") purchased an

RV[1] trailer from Mike Riehl's Roseville RV Center ("Mike Riehl's"), which is located in Michigan.  In addition, Mike Riehl's apparently performed service work on the RV trailer.  On July 3, 2003, Plaintiff Tammy states that she was driving the family's SUV and towing the RV trailer on I-275, when the trailer fishtailed and caused the SUV to roll over.  Plaintiff Tammy and her two minor sons, Eric and Adam, were injured in the accident.

Plaintiffs are Michigan residents.  Fleetwood Travel Trailers of Texas, Inc., ("Defendant Fleetwood"), is a manufacturer of recreational vehicles.[2]  Defendant Fleetwood is a California-based company that is incorporated in Delaware.[3]  Dexter Axle ("Defendant Dexter Axle") is a manufacturer of component parts for recreational vehicles.  Defendant Dexter Axle is an Indiana-based company that is incorporated in Delaware.  Mike Riehl's is a Michigan company.

Plaintiffs filed four separate complaints in Wayne County state court.  The first and second lawsuits are:

|  |  |
|---|---|
| Case #1: | Case No. 04-437907-NO—Dec. 13, 2004 Plaintiffs Eric and his two minor sons (Eric and Adam) filed a complaint against Mike Riehl's for negligence and loss of consortium. |
| Case #2: | Case No. 05-503698-NO—Feb. 8, 2005 Plaintiff Tammy filed a complaint against Mike Riehl's for negligence. |

On June 24, 2005, Cases #1 and #2 ("Mike Riehl's cases") were consolidated before Judge Wendy Baxter.  Much later, on February 22, 2006, Mike Riehl's filed a "motion to name non-

---

[1]RV = recreational vehicle.

[2]In the caption, Fleetwood Travel Trailers of Texas, Inc., is improperly identified as Fleetwood Enterprises, Inc.

[3]Defendant Fleetwood is also characterized as a Texas corporation.  However, such a distinction is insignificant, as Defendant Fleetwood is nonetheless a non-Michigan party.

party at fault." The state court denied the motion. The "Mike Riehl's cases" were scheduled for trial in late February 2007.

In addition to its first two lawsuits, Plaintiffs filed two additional lawsuits in state court:

| | | |
|---|---|---|
| Case #3: | Case No. 06-618773-NI—June 30, 2006<br>Plaintiffs Eric and his two minor sons (Eric and Adam) filed a complaint against Defendants Fleetwood and Dexter Axle for negligence. | |
| Case #4: | Case No. 06-618776-NP—June 30, 2006<br>Plaintiffs Tammy and Eric filed a complaint against Defendants Fleetwood and Dexter Axle for negligence and loss of consortium. | |

In early August 2006, Cases #3 and #4 ("Fleetwood/Dexter cases") were reassigned to Judge Baxter. On August 7 or 8, 2006, Defendants Fleetwood and Dexter Axle were served with process regarding the "Fleetwood/Dexter cases."

Shortly after the cases were reassigned, Mike Riehl's and Plaintiffs entered a stipulated order to consolidate the four cases for purposes of discovery and trial. Although the stipulation stated that all of the parties had consented, neither Defendant Fleetwood nor Defendant Dexter Axle signed the stipulation. In late August 2006, Judge Baxter ordered that the cases be consolidated because of the stipulated agreement. Defendants Fleetwood and Dexter Axle state that they did not consent to the agreement, nor were they even aware of the consolidation until mid-August 2006, when Plaintiffs sent them a letter about an upcoming scheduling conference.

On August 31, 2006, Defendants Fleetwood and Dexter Axle timely removed the "Fleetwood/Dexter cases" (Cases #3 and #4) to this Court, based on diversity jurisdiction. The cases were assigned to Judge Friedman and Judge Lawson; however, Judge Lawson's case was reassigned to Judge Friedman as a companion case. In early September 2006, Defendants

3

Fleetwood and Dexter Axle advised Plaintiffs and Mike Riehl's that they would not attend the state-court scheduling conference because they had properly removed the "Fleetwood/Dexter cases" to federal court.

On September 13, 2006, Defendant Dexter Axle's counsel sent a letter to Plaintiffs and to Mike Riehl's, in order to advise them that Defendant Dexter Axle would seek Rule 11 sanctions if Plaintiffs or Mike Riehl's filed a motion to remand.  (Def. Dexter Axle's Resp. to Mot. to Remand, Ex. A.)  The letter explained that both state and federal caselaw shows that diversity of citizenship is not destroyed by the consolidation of cases.  (Id.)  Furthermore, Defendant Dexter Axle's counsel faxed a second letter to Mike Riehl's on November 28, 2006.  (Id. Ex. B.)  This letter similarly presented the reasons why a motion to remand was inappropriate and explained that sanctions would be sought against Mike Riehl's if it filed a motion to remand.  (Id.)

On November 28, 2006, Mike Riehl's filed its Motion to Remand.  On December 5, 2006, Plaintiffs filed a response, in which they stated that they "neither concurred nor objected to the Motion."  (Pls.' Resp. to Mot. to Remand ¶ 16.)  On January 18, 2007, the Court denied the Motion to Remand.  In addition, the Court imposed sanctions against Mike Riehl's for having filed such a motion.

## II.    RECAP OF MOTION TO REMAND BY NON-PARTY MIKE RIEHL'S

Mike Riehl's sought to remand the "Fleetwood/Dexter cases" to state court, pursuant to 28 U.S.C. § 1447(c).  Mike Riehl's argued that there was no diversity jurisdiction.  Mike Riehl's stated that because the "Mike Riehl's cases" (Cases #1 and #2) and the "Fleetwood/Dexter cases" (Cases #3 and #4) had been consolidated in state court, there were now Michigan citizens on both sides, as Plaintiffs and defendant Mike Riehl's are Michigan residents.  Thus, Mike

Riehl's asserted that there was no diversity of citizenship for federal jurisdiction. Mike Riehl's cited to one non-binding case—Carter v. Ledraplastic Spa, 313 F. Supp. 2d 736, 737 (M.D. Tenn. 2004)—which found that if two cases "were consolidated before removal, diversity jurisdiction [would be] destroyed because both [p]laintiff and [defendant] are citizens of Tennessee." Lastly, Mike Riehl's argued that remanding the cases would serve judicial economy and avoid piecemeal litigation, by allowing the state court to hear all four cases.

On the other hand, Defendants Fleetwood and Dexter Axle argued against a remand. Their arguments, which were presented to Mike Riehl's in two warning letters and with which the Court agreed, were very persuasive. The Court denied the Motion to Remand for the following reasons.

First, the Michigan Court Rule regarding consolidation mirrors Federal Rule of Civil Procedure 42.[4] As such, the federal courts' findings about consolidation are instructive as to consolidation at the state level.

In Webb v. Just In Time, Inc., 769 F. Supp. 993 (E.D. Mich. 1991), the Eastern District of Michigan addressed the effect of consolidation on diversity of citizenship. In Webb, the court explained that the "[c]ase law has clearly established that actions consolidated pursuant to Rule

---

[4]MICH. CT. R. 2.505.  Consolidation; Separate Trials.
(A) Consolidation.  When actions involving a substantial and controlling common question of law or fact are pending before the court, it may . . . order the actions consolidated . . . .

FED. R. CIV. P. 42.  Consolidation; Separate Trials.
(a) Consolidation.  When actions involving a common question of law or fact are pending before the court, it may order . . . all the actions consolidated . . . .

42(a) maintain a separate identity.  Thus, when determining whether diversity of citizenship

exists, the claims must be addressed separately."  Webb, 769 F. Supp. at 996 (citations omitted).

See also 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE

§ 2382, at 430 (2d ed. 1995) (stating that "in a substantial number of cases[,] federal courts have

held that actions do not lose their separate identity because of consolidation under Rule 42(a)").

The Eastern District of Michigan further stated that "there is case law supporting the proposition

that federal courts should protect a litigant's right to diversity jurisdiction."  Webb, 769 F. Supp.

at 997.  Thus, the court concluded that "[c]onsolidation does not destroy diversity of

citizenship."  Id. at 999.

     Moreover, the Sixth Circuit has recently echoed such language, by reaffirming that

consolidated cases (and the parties) maintain their separate identities.  In citing to an often-

quoted passage from the United States Supreme Court, the Sixth Circuit held:

> [C]onsolidation is permitted as a matter of convenience and
> economy in administration, but does not merge the suits into a
> single cause, or change the rights of the parties, [or make those who
> are parties in one suit parties in another].

First Nat'l Bank of Pulaski v. Curry, 301 F.3d 456, 467 (6th Cir. 2002) (quoting Johnson v.

Manhattan Ry. Co., 289 U.S. 479, 496-97 (1933)).  See also 9 WRIGHT & MILLER, FEDERAL

PRACTICE AND PROCEDURE § 2382, at 430 (explaining that the courts still regard the Manhattan

Railway Co. language as authoritative, even though the Supreme Court's ruling in that case came

before Rule 42(a) was adopted).  Thus, the parties in separate cases of a consolidated action do

not become parties to the other cases.  Each case maintains its own identity.

     Here, even though the original four cases were consolidated in state court, the parties in

the "Fleetwood/Dexter cases"—which were removed to this Court—never became parties to the

6

"Mike Riehl's cases," which remain in state court.  And vice versa, as the parties in the "Mike Riehl's cases" never became parties to the "Fleetwood/Dexter cases."  Therefore, this Court needed only to examine the citizenship of the parties involved in the two companion cases before it.  In those cases, Plaintiffs are Michigan residents, and Defendants Fleetwood and Dexter Axle are not Michigan residents.  As such, there is diversity jurisdiction.

Second, the Michigan Court of Appeals has ruled in the same way as the federal courts. In MacMullan v. Babcock, 196 N.W.2d 489 (Mich. Ct. App. 1972), the court of appeals found that consolidation does not merge the identities of the parties from the separate cases.  The court explained that "[t]he comments to the [Michigan Court] rules make it clear that such a consolidation does not merge the two cases.  When a decision is rendered, it is to be rendered separately in each case."  Id. at 493.  In fact, the Michigan Court of Appeals strengthened its position by referencing the federal courts' interpretation of Federal Rule of Civil Procedure 42(a), by saying that "[t]he Federal courts have reached the same conclusion as to the Federal rule of consolidation."  Id.  After warning that consolidated actions should never result in "confusion and prejudice" to any of the involved parties, the court of appeals reiterated that "[w]hen cases are consolidated, they keep their separate identities[,] and parties in one action do not become parties to the other, and pleadings in one are not pleadings in the other."  Id. (citations omitted).  Thus, the state court found, similarly to the federal courts, that consolidation has no effect on diversity of citizenship.

Third, Mike Riehl's has no standing to seek remand of the companion cases before this Court.  In the removed cases, the Plaintiffs are the Rasmussens and the Defendants are Fleetwood and Dexter Axle.  Mike Riehl's is not a party in either of the federal companion

cases.  Therefore, Mike Riehl's has no standing to assert a motion here.

Lastly, the removed cases are now under the authority of this Court.  As the Eastern District of Michigan has explained, "[a]fter a removal of an action, a federal court acquires total, exclusive jurisdiction over the litigation.  The removed case is governed by the Federal Rules of Civil Procedure and is treated as though it originally had been instituted in the federal court." Crummie v. Dayton-Hudson Corp., 611 F. Supp. 692, 693 (E.D. Mich. 1985) (citations omitted).

For the above reasons, on January 18, 2007, the Court issued a written Opinion and Order denying the Motion to Remand filed by Mike Riehl's.  In its Opinion and Order, the Court also imposed sanctions against Mike Riehl's.  The Court explained:

> ### III.   SANCTIONS[5]
> Defendants Fleetwood and Dexter Axle seek sanctions against Mike Riehl's.  Defendants argue that the Motion to Remand is really just "a calculated attempt [by Mike Riehl's] to cure its failure to timely file a Notice of Non-Party At Fault against Fleetwood and Dexter" in the "Mike Riehl's cases" that are still in state court.  (Def. Fleetwood's Br. Supp. Resp., 1.)  In February 2006, when Mike Riehl's finally did file a notice of non-party at fault, the state court denied it.  Defendants Fleetwood and Dexter Axle claim that Mike Riehl's is now trying to "circumvent the court rules, not to mention Defendants' constitutional rights."  (Id.) In addition, Defendants Fleetwood and Dexter Axle previously sent a letter to Mike Riehl's to explain that if Mike Riehl's filed a motion to remand, the Defendants would seek sanctions.
> After review, the Court finds Defendants' arguments are persuasive.  Therefore, the Court will grant sanctions, as there was no basis for Mike Riehl's to have filed its Motion to Remand.

(Op. and Order, Jan. 18, 2007, at 8.)

## III.   FEDERAL RULE OF CIVIL PROCEDURE 11

Rule 11(b) states:

---

[5]It should be noted that the Court's Opinion and Order stated that "sanctions" were granted.  The specific type of sanctions, such as Rule 11 sanctions, was not identified.

(b) Representations to the Court.  By presenting to the court . . . a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

    (1) it is not being presented for any *improper purpose*, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
    (2) the claims, defenses, and other legal contentions therein are *warranted by existing law* or by a *nonfrivolous argument* for the extension, modification, or reversal of existing law or the establishment of new law;
    (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
    (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. R. CIV. P. 11(b) (emphasis added).

    Rule 11 allows sanctions to be initiated either by motion or by the court.  FED. R. CIV. P. 11(c)(1).  If initiated by motion, Rule 11 requires:

By Motion.  A motion for sanctions under this rule shall be made *separately* from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).  It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within *21 days after service of the motion* . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.  If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

FED. R. CIV. P. 11(c)(1)(A) (emphasis added).  If initiated sua sponte by the court, Rule 11 requires:

On Court's Initiative.  On its own initiative, the court may enter an order *describing the specific conduct* that appears to violate

9

> subdivision (b) and directing an attorney, law firm, or party to
> *show cause* why it has not violated subdivision (b) with respect
> thereto.

FED. R. CIV. P. 11(c)(1)(B) (emphasis added).

In addition, Rule 11 instructs that "sanctions imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(2). Furthermore, Rule 11 does not allow "[m]onetary sanctions [to] be awarded against a represented party for violation of subdivision (b)(2)." FED. R. CIV. P. 11(c)(2)(A). Rule 11 also does not allow "[m]onetary sanctions [to] be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned." FED. R. CIV. P. 11(c)(2)(B). Lastly, Rule 11 requires that "[w]hen imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed." FED. R. CIV. P. 11(c)(3).

## IV.    DEFENDANTS' MOTION FOR SANCTIONS AGAINST MIKE RIEHL'S

Defendants Fleetwood and Dexter Axle ask the Court to uphold its earlier Opinion and Order awarding sanctions against Mike Riehl's. Defendant Dexter Axle bases its Motion for Rule 11 Sanctions on Rule 11(b)(1)—filing for an improper purpose—and Rule 11(b)(2)—filing for an extension of law that is unwarranted or based on a frivolous argument. As to the improper purpose, Defendant Dexter Axle explains that Mike Riehl's had no standing to file a motion in this case, and that its filing of a Motion to Remand was clearly inappropriate and unnecessarily increased the cost of litigation. As to the unwarranted or frivolous argument for an extension of existing law, Defendant Dexter Axle argues that the filing of a motion to remand by Mike Riehl's was frivolous, given the existing federal and state caselaw. Defendant Dexter Axle

asserts that Mike Riehl's knew that its position was frivolous, as Defendants had sent two warning letters to Mike Riehl's.  Defendant Dexter Axle requests that the court award attorney fees and costs pursuant to Rule 11(c)(1)(A), which applies to motions for sanctions.

Defendant Fleetwood concurs in Defendant Dexter Axle's Motion for Rule 11 Sanctions. In addition, Defendant Fleetwood states that the Court can properly sanction Mike Riehl's independently of Rule 11, as the Court has inherent power to sua sponte impose sanctions for "bad faith" litigation.  (Def. Fleetwood's Br. in Concurrence to Def. Dexter Axle's Mot. for Rule 11 Sanctions ¶ 2.)

On the other hand, Mike Riehl's argues that the Court should deny sanctions based on either Rule 11 or the Court's inherent power to sanction.  Furthermore, Mike Riehl's states that the Court improperly issued sanctions in its earlier Opinion and Order.

## A.    RULE 11(C)(1)(A)—SANCTIONS INITIATED BY MOTION OF A PARTY

Mike Riehl's argues that Defendants did not comply with Rule 11(c)(1)(A)'s procedural requirements, by neither serving a separate motion for sanctions on Mike Riehl's nor providing a 21-day "safe harbor" period before filing its motion for sanctions with the Court.  Thus, Mike Riehl's asks the Court to deny sanctions.

On the other hand, Defendants assert that they *substantially* complied with Rule 11's requirements.  Defendants argue that the two warning letters sent to Mike Riehl's constituted proper notice of impending sanctions.  Moreover, Defendants seem to assert that they observed the 21-day "safe harbor" period because the first warning letter was sent more than two months before Mike Riehl's filed its Motion to Remand.

Here, the Court will deny Rule 11 sanctions because Defendants did not comply with Rule 11(c)(1)(A), which covers sanctions initiated by motion.  In <u>Ridder v. City of Springfield,</u>

the Sixth Circuit denied Rule 11 sanctions because the requesting party did not strictly adhere to the procedural requirements of Rule 11(c)(1)(A).  109 F.3d 288 (6th Cir. 1997).  In so holding, the Sixth Circuit explained that "a party seeking sanctions *must* follow a two-step process: first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court."  Ridder, 109 F.3d at 294.

A Rule 11(c)(1)(A) motion for sanctions must be *separate* from other motions or papers, and the moving party must allow *21 days* for the offending party to correct or withdraw the offensive motion or pleading.  See Care Choices HMO v. Engstrom, 170 F. Supp. 2d 741, 745 (E.D. Mich. 2001) (denying defendant's motion for sanctions because "[d]efendant did not make its Motion for Sanctions separately from other motions, and did not serve [plaintiff] with the Motion 21 days before filing it with the Court"); United States v. Marion L. Kincaid Trust, 463 F. Supp. 2d 680, 697-98 (E.D. Mich. 2006) (denying Rule 11 sanctions because moving party made no separate motion for sanctions and therefore did not provide a 21-day safe harbor); 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1337.1, at 710 (3d ed. 2004) (stating "numerous federal courts . . . have held that a party cannot include a Rule 11 motion as part of a motion to dismiss, a motion for summary judgment, or any other motion made in the course of the action") (footnote omitted).[6]  The Sixth Circuit has firmly explained that the "safe harbor" provision is "an absolute requirement,"  Ridder, 109 F.3d at 296,

_____

[6]It should be noted that in Ridder, "the Sixth Circuit held that a motion for sanctions sufficiently complied with the separateness requirement, even though the motion included requests for sanctions and attorney fees pursuant to Rule 11" and several other statutory claims for sanctions.  5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1337.1, at 712.  However, such a conclusion is "easily limited to its facts" because the case involved a Rule 11 motion amidst similar requests for sanctions.  Id. at 713.  Thus, "counsel is advised to honor Rule 11's demand for separateness."  Id.

because the "safe harbor" provision allows "the offending party [to] avoid sanctions altogether by withdrawing or correcting the challenged document or position after receiving notice of the allegedly violative conduct," Id. at 294.  As such, a "party must now serve a Rule 11 motion on the allegedly offending party at least twenty-one days prior to conclusion of the case or judicial rejection of the offending contention."  Id. at 295.

Given the strict interpretation of Rule 11's procedural requirements, the Court finds that the warning letters to Mike Riehl's were not sufficient to trigger the 21-day "safe harbor" period. For instance, the Advisory Committee Notes to Rule 11 state:

> The rule provides that requests for sanctions must be made as a *separate motion*, i.e., not simply included as an additional prayer for relief contained in another motion. . . . To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the *"safe harbor" period begins to run only upon service of the motion*.  In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.

FED. R. CIV. P. 11 advisory committee notes, 82 (emphasis added).  Such language demonstrates that an informal notice, such as a letter, cannot take the place of a formal motion served on the opposing party.  See Bates v. Colony Park Ass'n, 393 F. Supp. 578, 601 (E.D. Mich. 2005) (finding counsel's letter alerting opposing counsel to forthcoming motion for sanctions did not comply with Rule 11's requirements because "[b]inding Sixth Circuit precedent—as well as the plain language of Rule 11 itself—demonstrates that the July 22 warning letter from the CPA's counsel was not an adequate substitute for service of the CPA's actual motion"); McKenzie v. Berggren, P.C., 212 F.R.D. 512, 514 (E.D. Mich. 2003) (finding "the Advisory Committee clearly does not view an informal notice as a substitute for filing a formal motion" and requiring

13

"that an informal notice should be given *in addition* to the service of the motion").  Thus, a party

must serve its proposed motion for sanctions on the allegedly offending party before that party

can file its motion for sanctions with the court, as the 21-day "safe harbor" period is only

triggered upon service of the motion on the opposing party.[7]

In sum, the Court will deny sanctions pursuant to Rule 11(c)(1)(A).  Defendants

Fleetwood and Dexter Axle did not serve their Motion for Rule 11 Sanctions on Mike Riehl's, as

they merely sent two warning letters.  As such, Defendants did not comply with Rule

11(c)(1)(A)'s procedural requirements of serving a separate motion and providing a 21-day "safe

harbor" before filing the motion with the Court.  Therefore, the Court will not grant Defendants'

---

[7]The Court takes note of Barker v. Bank One, Lexington, N.A., 156 F.3d 1228, 1998 WL 466437 (6th Cir. July 30, 1998), which found that *substantial compliance* with Rule 11's procedures is sufficient.  In Barker, the Sixth Circuit upheld the district court's award of sanctions.  Although defendants did not serve a separate motion for sanctions on plaintiff, defendants did send two warning letters to advise plaintiff that defendants would seek sanctions against plaintiff's frivolous motion to dismiss.  Id. at *2.  The warning letters were sent several months before the motion to dismiss was decided.  Id.  In upholding the sanctions, the Sixth Circuit "conclude[d] that the purpose of the safe harbor provision was complied with in this case by the warning letters [plaintiff] received."  Id.

However, the Court will not follow Barker for two reasons.  First, Barker is an unpublished decision.  The often-cited Ridder case, which calls for strict adherence to the plain language of Rule 11's requirements, is a reported and binding decision from the Sixth Circuit.  Second, the Eastern District has already disagreed with Barker.  For instance, the Eastern District found that Barker's finding—that warning letters comply with Rule 11's "safe harbor" provision—was "dicta" because "the motion for sanctions in that case had, in fact, been served on the opposing party 21 days before filing it with the court."  Bates, 393 F. Supp. 2d at 602 n.30 (quotations and citation omitted).  The Eastern District further found that "this Court shares the view of Judge Feikens that 'the Barker case is wrongly decided,' where the plain language of the 'safe harbor' provision requires service of the motion at least 21 days before filing with the court, and where the Advisory Committee notes to the Rule indicate that warning letters are supplemental to, and not a substitute for, the service of the Rule 11 motion itself."  Id. (quoting McKenzie, 212 F.R.D. at 514).  Thus, this Court will also disregard Barker and continue to strictly interpret the procedural requirements of Rule 11(c)(1)(A).

14

Motion for Rule 11 Sanctions based on Rule 11(c)(1)(A).[8]

## B.     RULE 11(C)(1)(B)—SANCTIONS INITIATED BY THE COURT

Mike Riehl's argues that if the Court based its earlier Opinion and Order on Rule

11(c)(1)(B) when it granted sanctions, then the Court's sua sponte award of sanctions was

improper because the Court did not issue an express order to show cause about sanctions.

Mike Riehl's argument is persuasive, but not determinative, in this case.  Rule

11(c)(1)(B) states that a court's order must "describ[e] the specific conduct that appears to

violate subdivision (b) and direct[] an attorney, law firm, or party to show cause why it has not

violated subdivision (b) with respect thereto."  FED. R. CIV. P. 11(c)(1)(B).  The Advisory

Committee Notes state that "[t]he power of the court to act on its own initiative [through Rule

11(c)(1)(B)] is retained, but with the condition that this be done through a show cause order."

FED. R. CIV. P. 11 advisory committee notes, 82.  The purpose of the "show cause" requirement

is to "provide[] the person with notice and an opportunity to respond."  Id.

Here, in its earlier Opinion and Order, the Court imposed sanctions, but it did not

expressly issue a show cause order before such imposition.  However, in the Opinion and Order,

the Court required that Defendants submit their Bills of Costs and that Mike Riehl's submit a

response.  Defendants have since filed a formal Motion for Rule 11 Sanctions, and Mike Riehl's

has explained why it believes that it should not be sanctioned.  In hindsight, if the Court's award

---

[8]Defendants Fleetwood and Dexter Axle formally filed their separate Motion for Rule 11
Sanctions in response to this Court's Opinion and Order that denied the Motion to Remand and
imposed sanctions.  However, such a motion seems to be untimely.  The motion was formally
filed almost one month *after* the Court had already denied the Motion to Remand.  Furthermore,
the separate Motion for Rule 11 Sanctions was never served on Mike Riehl's *before* being filed
with the Court.  As such, the filing does not appear to achieve the purpose of Rule 11, which is
to deter baseless filings and to allow an offending party the time to correct or withdraw the
offensive motion or pleading.

of sanctions was pursuant to Rule 11(c)(1)(B), then it should have issued a show cause order before imposing sanctions against Mike Riehl's.  However, Mike Riehl's seems to think that it is entitled to a formal hearing on the matter.  This does not appear to be the requirement.  "[A] significant number of cases have held that an elaborate or formal hearing may not be necessary to dispose of a Rule 11 motion.  Neither due process considerations nor the text of Rule 11 requires that there be an extensive or formal hearing, but only that the right to submit a brief be provided, because procedural due process may be satisfied by affording the party being charged with an opportunity to respond in writing."  5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1337.3, at 749-51 (footnotes omitted).  Thus, it seems that the briefs already submitted by each side satisfy Rule 11's requirement that a party be heard before sanctions are awarded.  Therefore, although the Court may have prematurely imposed sanctions pursuant to Rule 11(c)(1)(B), that no longer seems to be the situation.  The Court now could issue sanctions on its own initiative, as the Court has had the opportunity to review the briefs.  However, for the reasons explained below, the Court will not grant Defendants' Motion for Rule 11 Sanctions based on Rule 11(c)(1)(B).

## C.   RULE 11(C)(3)—DESCRIPTION OF VIOLATIVE CONDUCT AND BASIS FOR SANCTIONS

Mike Riehl's argues that the Court's Opinion and Order neither described the offending conduct nor explained the basis for the sanctions.  As such, Mike Riehl's argues that the Court did not comply with Rule 11(c)(3), which requires such a description and explanation, regardless of whether the Court issues the sanctions pursuant to motion (Rule 11(c)(1)(A)) or on its own initiative (Rule 11(c)(1)(B)).

When a court determines whether conduct violates Rule 11, the Sixth Circuit has held

16

that "the test for imposition of Rule 11 sanctions is whether the attorney's conduct was

reasonable under the circumstances." Ridder, 109 F.3d at 293.  See FED. R. CIV. P. 11 advisory

committee notes, 79.  Good faith is no defense.  FED. R. CIV. P. 11 advisory committee notes, 81;

Tahfs v. Proctor, 316 F.3d 584, 594 (6th Cir. 2003).  The court must also take heed that the

"purpose of Rule 11 sanctions is to deter rather than to compensate."  FED. R. CIV. P. 11 advisory

committee notes, 81.  See Elsman v. Standard Fed. Bank, 238 F. Supp. 2d 903, 908 (E.D. Mich.

2003) (stating Rule 11 seeks "to deter baseless filings").  In other words, Rule 11 is intended to

deter a "litigation strategy" of "press forward at all costs."  B & H Med., LLC v. ABP Admin.,

Inc., 354 F. Supp. 2d 746, 750 (E.D. Mich. 2005).

Rule 11(b) presents four bases for sanctionable conduct.  Here, the applicable bases

would be Rule 11(b)(1) or (b)(2) because the Motion to Remand deals with a legal contention.

Rule 11(b)(3) and (b)(4) pertain to factual contentions, so they are not applicable in this case.

Rule 11(b)(1) allows for sanctions regarding a motion filed for "any improper purpose."

Rule 11 provides examples of an "improper purpose," which can include "harass[ment]";

"unnecessary delay"; or "needless increase in the cost of litigation."  FED. R. CIV. P. 11(b)(1).

However, Rule 11 does not limit an "improper purpose" to these examples; it merely provides a

few instances of circumstances that could be considered an "improper purpose."  Thus, Rule 11

leaves the court with discretion to determine whether an "improper purpose" exists.

Here, Defendants Fleetwood and Dexter Axle argue that Mike Riehl's had the "improper

purpose" of trying to "cure its failure to timely file a Notice of Non-Party At Fault against

Fleetwood and Dexter" in the "Mike Riehl's cases" that are still in state court.  (Def.

Fleetwood's Br. Supp. Resp. to Mot. to Remand, 1.)  Moreover, Defendants argue that it was

improper for Mike Riehl's to assert its Motion to Remand in this case because it has no standing,

17

as Mike Riehl's is not a party in either of the companion cases before the Court. Lastly, Defendants argue that it was improper for Mike Riehl's to file its motion after Defendants sent warning letters that explained the existing caselaw relating to standing, non-parties, and consolidation of cases.

On the other hand, Mike Riehl's argues that it had no "improper purpose" for filing its Motion to Remand. Mike Riehl's states that its Motion to Remand was unrelated to its "attempts to name Defendants as non-parties in the state court actions." (Mike Riehl's Resp. to Defs.' Mot. for Sanctions, 6.) Mike Riehl's further states that Defendants have no evidence to support their allegations. Furthermore, Mike Riehl's explains that the state court's denial of its notice of non-party at fault was very remote in time to the filing of its Motion to Remand, which further supports its assertion that there is no connection between them.

Here, the Court could order Rule 11 sanctions based on Rule 11(b)(1). Regardless of whether the Motion to Remand was a way to circumvent the state court's ruling on the non-party at fault issue, the Court still finds that there was an "improper purpose" for the Motion to Remand. Mike Riehl's is not a party in the companion cases before this Court. Applying Rule 11's objective standard of reasonableness, it seems that any reasonable attorney would know that a person has no standing to assert a motion in a case where it is not a party. Moreover, a reasonable attorney would be familiar with the existing federal and state caselaw, which shows that diversity of citizenship is not destroyed by consolidation. As such, a reasonable attorney would know that a state court's consolidation of the four cases does not merge the identities of those cases. Thus, the Court could award Rule 11 sanctions on the basis of Rule 11(b)(1), as the Motion to Remand was for an "improper purpose" because it caused a "needless increase in the cost of litigation," and a reasonable attorney would have known that the motion was baseless.

Rule 11(b)(2) allows for sanctions regarding a motion that is not warranted by existing law or is a frivolous argument for an extension or modification of existing law.  In regards to Rule 11(b)(2), Mike Riehl's argues that the Court's Opinion and Order did not find the position of Mike Riehl's to be unwarranted or frivolous, but instead that Defendants' arguments were merely more "persuasive."  (Mike Riehl's Resp. to Defs.' Mot. for Sanctions, 7.)  Furthermore, Mike Riehl's asserts that it was only practicing "vigorous advocacy" in presenting its Motion to Remand.  (Id. at 7-8.)  Lastly, Mike Riehl's again cites to Carter v. Ledraplastic Spa, 313 F. Supp. 2d 736 (M.D. Tenn. 2004), which is a non-binding Tennessee case.

Here, the Court could order Rule 11 sanctions based on Rule 11(b)(2).  First, "vigorous advocacy" is no excuse for asserting, and then continuing to assert, a legal argument that a party knows is frivolous.  The Advisory Committee Notes explain that Rule 11 is violated by an attorney who "reaffirm[s] to the court and advocat[es] positions contained in those pleadings and motions after learning that they cease to have any merit."  FED. R. CIV. P. 11 advisory committee notes, 80.  The Sixth Circuit has similarly held that a party's responsibility of diligent inquiry under Rule 11 is "not a one-time obligation," but rather that a party is "impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11."  Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc., 88 F.3d 368, 374 (6th Cir. 1996) (quotations and citation omitted).  The Court finds that Mike Riehl's has neither engaged in diligent inquiry nor practiced adequate responsibility.  Second, it should have been clear to Mike Riehl's that its position was untenable, given the existing federal and state caselaw.  Its motion is even more egregious because Defendants alerted Mike Riehl's about the existing caselaw through their warning letters.  Also, Mike Riehl's again relies on a non-binding case from the Middle District of Tennessee.  Lastly, a reasonable attorney would surely

know that a person cannot assert a motion in a case where it is not a party. Thus, the Court could award Rule 11 sanctions on the basis of Rule 11(b)(2), as the Motion to Remand was neither a contention supported by existing law nor a nonfrivolous argument for an extension of law; and as such, the motion was frivolous.

## D.    REVIEW OF RULE 11 SANCTIONS

The Court will deny Rule 11 sanctions pursuant to Rule 11(c)(1)(A)—which applies to motions for sanctions initiated by a party—because Defendants did not comply with the procedural requirements for a separate motion and a 21-day "safe harbor" period. Next, the Court could grant sanctions pursuant to Rule 11(c)(1)(B)—which applies to sanctions initiated by the court—because the Court has reviewed the briefs regarding sanctions, and the Court has found two bases for granting sanctions—Rule 11(b)(1) and (b)(2). However, the Court will deny sanctions pursuant to Rule 11(c)(1)(B) because the monetary penalty would be limited to a penalty payable to the Court.[9] The Court finds that, in this case, it is preferable to impose sanctions based on its inherent authority, so that the Court can both deter such conduct in the future and compensate Defendants for having had to defend against such a frivolous motion.

## V.    THE COURT'S INHERENT POWER TO SANCTION

In Chambers v. NASCO, Inc., 501 U.S. 32 (1991), the United States Supreme Court upheld a district court's imposition of sanctions pursuant to its inherent powers.[10] The Chambers

---

[9]The Advisory Committee Notes state that "a monetary sanction imposed after a court-initiated show cause order [is] limited to a penalty payable to the court." FED. R. CIV. P. 11 advisory committee notes, 82. See 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1336.3, at 705 (footnote omitted) (stating "Rule 11 also limits sanctions imposed on the court's initiative to penalties payable to the court").

[10]In Chambers, the Supreme Court affirmed an award of almost one million dollars in attorney fees and expenses because the defendant had repeatedly filed meritless motions and

20

Court explained that "[t]hese powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" <u>Chambers</u>, 501 U.S. at 43 (quoting <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 630-31 (1962)). Although the Supreme Court found "no legislative intent to limit the scope of this power," it advised that a court's inherent powers be "exercised with restraint and discretion." <u>Id.</u> at 44, 49 n.12. While the Supreme Court encourages district courts to first consider any applicable statutory rules for sanctions, the Supreme Court does not require that district courts do so, and it has held that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." <u>Chambers</u>, 501 U.S. at 49. <u>See</u> <u>First Bank of Marietta v. Hartford Underwriters Ins. Co.</u>, 307 F.3d 501, 517 (6th Cir. 2002) (stating the <u>Chambers</u> Court "leaves to the district court's 'informed discretion' whether the applicable statutes or rules are 'up to task,' given the circumstances of the particular conduct"). The Supreme Court explained that "an assessment of attorney's fees is undoubtedly within a court's inherent power." <u>Id.</u> at 45.

However, a court must find the existence of "bad faith" before it issues sanctions pursuant to its inherent authority. The Sixth Circuit has explained that a "district court has the 'inherent authority to award fees when a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons.'" <u>First Bank of Marietta</u>, 307 F.3d at 512 (quoting <u>Big Yank Corp. v. Liberty Mut. Fire Ins. Co.</u>, 125 F.3d 308, 313 (6th Cir. 1997). In other words, a "court may impose sanctions pursuant to its inherent powers only when it finds the action in question was taken in bad faith," <u>Id.</u> at 517 (quoting <u>Lockary v. Kayfetz</u>, 974 F.2d 1166, 1174 (9th Cir. 1992), "or

---

engaged in delaying actions. 501 U.S. at 40-41.

conduct that is 'tantamount to bad faith,'" Id. (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980)).

The Sixth Circuit has instructed that a finding of "bad faith" is a factual determination. First Bank of Marietta, 307 F.3d at 521 n.16.  As such, a court must "[m]ake actual findings of fact that demonstrate that the claims advanced were meritless, that counsel knew or should have known that the claims were meritless, *and* that the claims were filed for an improper purpose." Id. at 519 (quotations and citation omitted).  In addition, the United States Supreme Court has indicated that the inherent power's "bad-faith exception resembles . . . Rule 11's certification requirement, which mandates that a signer of a paper filed with the court warrant that the paper 'is not interposed for any improper purpose.'" Chambers, 501 U.S. at 46 n.10.  The Sixth Circuit has similarly found that the terms "improper purpose" and "bad faith" are used interchangeably. Id. at 519 n.15.   Thus, a court's "bad faith" analysis for its inherent authority parallels the "improper purpose" analysis for Rule 11.

Here, Mike Riehl's argues that the Court should not grant sanctions under the Court's inherent authority.  Mike Riehl's asserts that it did not act in bad faith, but rather that it possessed a good-faith belief in its legal contentions.  Moreover, Mike Riehl's argues that the courts that have used their inherent authority to sanction have done so in cases where the offending conduct has been much more egregious and pervasive than the conduct at issue here. Mike Riehl's explains that it has only made *one* attempt to remand the case, as opposed to the sanctionable conduct committed by an offending party that has directly disobeyed court orders, repeatedly committed violations, or perpetrated a fraud on the court.  Thus, Mike Riehl's asks that the Court not grant sanctions.

The Court will grant sanctions against Mike Riehl's pursuant to the Court's inherent

authority.  The conduct of Mike Riehl's is "tantamount to bad faith."  As explained in the above analysis for Rule 11(b)(1) and (b)(2),[11] the Court finds that the Motion to Remand constitutes a frivolous action, filed for an "improper purpose."  First, Mike Riehl's itself raised eyebrows from the beginning, when it entered a stipulated consolidation agreement for the four cases in state court, even though Defendants Fleetwood and Dexter Axle had not signed the stipulated agreement and seemed to be unaware of it.  Furthermore, the state court denied Mike Riehl's non-party at fault request because it was untimely.  It seems that the Motion to Remand was a way to get Defendants back into state court as parties at fault.  Moreover, the Motion to Remand is frivolous, and Mike Riehl's was made aware of this by Defendant's explanatory letters.  Nevertheless, Mike Riehl's persisted with its baseless contention to remand.  In the end, Mike Riehl's needlessly increased the cost of litigation by filing a motion that was clearly frivolous and most likely delayed the proceedings, as Defendants' counsel has had to divert resources in order to defend against such an action.  Thus, the Motion to Remand by Mike Riehl's amounts to a frivolous filing for an "improper purpose," or in other words, an action pursued in "bad faith."  Thus, the Motion to Remand is sanctionable.

## VI.   <u>AMOUNT OF SANCTIONS REQUESTED BY DEFENDANTS</u>

As instructed by the Court in its previous Opinion and Order, Defendants Fleetwood and Dexter Axle have submitted their Bills of Costs.  Defendant Fleetwood asks for attorney fees and costs in the amount of $7,072.95.  Defendant Dexter Axle asks for attorney fees and costs in the amount of $6,440.64.

Mike Riehl's argues that the Bills of Costs are excessive.  Moreover, Mike Riehl's

---

[11]The Rule 11(b) analysis is included in Section IV, Part C, pp. 17-20.

asserts that an award of sanctions for such amounts does not comply with Rule 11's purpose of deterrence.

The Court finds Defendant Fleetwood's and Defendant Dexter Axle's Bills of Costs to be reasonable.  First, counsel has only requested those attorney fees and costs that relate to defending against the frivolous Motion to Remand, not to the entire litigation.  Second, the fact that both firms arrived at nearly the same amount seems to support the reasonableness of the time and preparation consumed by having to defend against such a motion.  Lastly, if the Court awards sanctions under its inherent authority, it is not restricted by Rule 11's purpose of deterrence.  Thus, the Court will award sanctions in the requested amounts.

## VII.  <u>CONCLUSION</u>

For the reasons stated above, the Court will impose sanctions against Mike Riehl's, pursuant to the Court's inherent power to sanction "bad faith" conduct in litigation.

In particular, the Court's award of sanctions is against the counsel for Mike Riehl's, not against Mike Riehl's itself.  The  matter at hand is a legal one, concerning caselaw and a motion to remand.  This is not a situation where the client has improperly withheld factual information. In this case, counsel should have known better than to continue to proceed with such a frivolous and legally unsupportable action.  Thus, sanctions will be imposed against the counsel, not the client.

Accordingly,


IT IS ORDERED that sanctions are imposed against counsel for Non-Party Mike Riehl's, pursuant to the Court's inherent authority.

24

IT IS FURTHER ORDERED that Defendants' Motion for Rule 11 Sanctions is

denied.


_____s/Bernard A. Friedman _
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated:  April 10, 2007
        Detroit, Michigan


**I hereby certify that a copy of the foregoing document
was served this date upon counsel of record
electronically and/or via first-class mail.**

_____/s/ Patricia Foster Hommel_____
        **Patricia Foster Hommel**
        **Secretary to Chief Judge Friedman**